# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| TARA L. HUFFMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 3:12-CV-00436-CAN |
| ) | |
| CAROLYN W. COLVIN, Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

On August 17, 2012, Plaintiff Tara L. Huffman ("Huffman") filed her complaint in this Court. On April 26, 2013, Huffman filed her opening brief requesting that the decision of the Administrative Law Judge ("ALJ") to deny her disability benefits and supplemental security income be reversed and remanded for further proceedings. On August 2, 2013, Defendant Commissioner of Social Security, Carolyn W. Colvin ("Commissioner") filed her response, asking the Court to affirm the ALJ's decision. No reply brief was filed. This Court may enter a ruling in this matter based on the parties' consent, 28 U.S.C. § 636(c), and 42 U.S.C. § 405(g).

## I. RELEVANT BACKGROUND

On January 29, 2009, Huffman filed an application for Title XVI Supplemental Security Income ("SSI") pursuant to 42 U.S.C. § 1382c(a)(3)(A), alleging a disability due to her Chronic Pulmonary Insufficiency ("COPD"), late effects musculoskeletal and connective tissue, and anxiety related disorders. Huffman alleged an onset date of September 30, 2006. Huffman's application was denied initially on May 5, 2009, and subsequently upon reconsideration on August 10, 2009. Huffman filed a written request for a hearing, which was held before an ALJ on December 3, 2010. Huffman, her friend, and a Vocational Expert ("VE") appeared at the hearing.

On April 29, 2011, the ALJ issued a decision denying Huffman's application. The ALJ began the decision by stating: "Although informed of the right to representation, the claimant chose to appear and testify without the assistance of an attorney or other representative." (Tr. 10.) The ALJ then proceeded with his analysis and found that Huffman was not disabled because (1) she had not engaged in substantial gainful activity since January 29, 2009, the application date; (2) her severe impairments included asthma, COPD, and lack of a thumb on her right hand; (3) she failed to establish with reliable evidence that she had an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) she retained the residual functional capacity ("RFC") to perform light work that does not involve concentrated exposure to pulmonary irritants such as dust, fumes or chemicals, and does not require fine finger manipulation or a firm grip with her non-dominant hand; and (5) she had no past relevant work, but jobs exist in significant numbers in the national economy that she can perform. On June 21, 2012, the Appeals Council denied Huffman's request for review, leaving the ALJ's decision as the final decision of the Commissioner. *See Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005); 20 C.F.R. § 404.981.

## III. ANALYSIS

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). In this case, Huffman, proceeding *pro se*, informs the Court that she has tried with all her effort to obtain

2

benefits, but does not understand why she has been denied. Her handwritten brief is short and unclear, and it will be liberally construed. *See Haines v. Kerner*, 404 U.S. 519 (1972).

Based on a liberal construction of Huffman's brief and the Commissioner's interpretation of the issues raised therein, the Court construes the issues in this case as whether the ALJ's failure to obtain a valid waiver of counsel was not harmless error, and whether the ALJ's step five analysis was supported by substantial evidence. However, before the Court can address the merits of the ALJ's decision to deny Huffman's application for disability benefits, the Court must address the preliminary and crucial procedural issue of whether the ALJ's failure to demonstrate that Huffman had made a knowing waiver of her right to the assistance of counsel was harmless error. The Commissioner contends that the ALJ's failure to obtain a valid waiver of counsel was harmless error because the ALJ adequately developed the record. Moreover, the Commissioner argues the it was Huffman's duty to show harm, which she failed to do. The Court is not convinced and concludes that the error was not harmless. As a result, the Court cannot address the merits of the ALJ's disability decision.

Claimants have "a statutory right to counsel at disability hearings." *Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir. 1991) (citing 42 U.S.C. § 406; 20 C.F.R. § 404.1700). A claimant may waive this right if she is "given sufficient information to enable [her] to intelligently decide whether to retain counsel or proceed *pro se*." *Id.* A claimant's waiver is valid if she waives the right to counsel after receiving "an explanation of the manner in which an attorney can aid in the proceedings, the possibility of free counsel or a contingency arrangement, and the limitation on attorneys' fees to twenty-five percent of past-due benefits plus required court approval of the fees." *Id.* "The information regarding the cost of any attorney is particularly relevant in disability cases where shortage of funds is likely to be an issue for the claimants." *Id.* However, a claimant is not

3

automatically entitled to a remand for failing to give a valid waiver of the right to counsel, unless the ALJ also failed to develop a full and fair record. *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994) (citing *Smith v. Sec'y of Health, Educ., & Welfare*, 587 F.2d 857, 860 (7th Cir.1978)).

When an ALJ does not sufficiently explain the right to counsel and does not obtain a valid waiver from the claimant, "the burden is on the Secretary to show the ALJ adequately developed the record." *Binion*, 13 F.3d at 245. Where a claimant proceeds *pro se,* the ALJ has a heightened duty to develop the record. *Id.*; *Smith*, 587 F.2d at 860. When a claimant is both *pro se* and suffers from a mental impairment, "the ALJ's duty to carefully develop the record is even greater." *Thompson*, 933 F.2d at 586. The ALJ satisfies this heightened duty to develop the record if he "probe[d] the claimant for possible disabilities and uncover[ed] all of the relevant evidence." *Binion*, 13 F.3d at 245 ("scrupulously and conscientiously probe into, inquire of and explore for all of the relevant facts...."); *see also Thompson*, 933 F.2d at 585–86.

In *Thompson*, a *pro se* claimant did not have expert opinions for her physical or mental disabilities and the ALJ did not take any steps to aid him in obtaining it. 933 F.2d at 586. The Seventh Circuit held that this was good cause to remand. The court explained that when a *pro se* claimant does not have a psychiatric or psychological examination and has a limited educational background, "it was incumbent upon the ALJ to emphasize the desirability of producing and to afford an opportunity to produce expert testimony, as to her medical disabilities and their effect on her capacity to engage in any substantial, gainful work within the meaning of the Act." *Id.* (citing *Smith v. Sec'y*, 587 F.2d 857, 861 (7th Cir. 1978)). The court in *Thompson* remanded the case for the claimant to receive a psychiatric examination and to allow for the development of the record. *Id*.

In the case at hand, Huffman is a *pro se* litigant. While the ALJ told Huffman that she had a right to counsel, he did not explain how an attorney could have aided her in the proceedings, that

4

she may have been able to obtain free counsel or a contingency arrangement, and that attorneys' fees would be limited to twenty-five percent of past-due benefits. As a result, the Commissioner conceded in her response brief that the ALJ did not obtain a valid waiver of counsel from Huffman. Huffman told the ALJ several times that she was unable to pay for past medical service and that she had received less medical attention due to her inability to pay for service. Information regarding the availability of free or low-cost counsel would have been particularly relevant to her when deciding whether to retain counsel, especially when the evidence showed that she had struggled to pay doctor bills and was seeking a low-income doctor. In addition, Huffman does not explain in her brief in this case why she decided to proceed *pro se* before the ALJ. The Court assumes, however, that the cost of an attorney was likely an issue because she discussed her shortage of funds repeatedly. Huffman's entitlement to a remand thus depends upon whether the ALJ developed a full and fair record.

The Commissioner argues that the ALJ adequately developed the record by asking about Huffman's daily activities and medical evidence. The Commissioner points out the ALJ questioned Huffman about her medical conditions, discovered that she had been to the emergency room, and later obtained a copy of the report. (Tr. 33–34; 45–46.) However, the hearing transcript shows that the ALJ very minimally probed for possible disabilities. Once Huffman indicated she was not receiving treatment for her mental health or her breathing problems, the ALJ moved on. Huffman indicated she had been to the emergency room for her hands, and the ALJ primarily asked about Huffman's hands. Moreover, the ALJ constantly interrupted Huffman when she began discussing her daily activities and her disabilities. For example, Huffman offered to explain her mental condition, but the ALJ interjected with the unrelated question, "Didn't you tell me you had, like, five children?" (Tr. 40.) Huffman answered affirmatively and the ALJ moved on without obtaining her explanation of her mental condition. Furthermore, Huffman had alleged that she had mental

5

impairments, which increased the ALJ's duty to develop the record for her as a *pro se* claimant. *See Thompson*, 933 F.2d at 586.

Similar to the *pro se* claimant in *Thompson*, Huffman did not have expert opinions for her disabilities and the ALJ did not take any steps to aid her in obtaining any. Huffman was a *pro se* claimant with a ninth grade education who alleged physical and mental disabilities but did not have a psychiatric or psychological examination from a treating physician. Accordingly, the ALJ should have told her about the desirability of having this type of evidence in the record. Instead the ALJ merely referenced Huffman's lack of mental health treatment, the state psychological examiner's refusal to opine about Huffman's mental limitations, and the lack of medical evidence in the record before using those facts as the sole basis for his opinion that she was not disabled. (Tr. 13, 14, 18, 21.) When Huffman asked for a postponement to obtain medical opinions, the ALJ should not have denied her request. He should have afforded her an opportunity to obtain and produce the evidence and did not.

In light of these facts, this Court finds that the ALJ should have taken more steps to develop the record by affording Huffman an opportunity to testify to her disabilities and to obtain and produce evidence, particularly from her upcoming appointment with the low-income doctor. These developments in the record would have been relevant to Huffman's disabilities and her ability to engage in any substantial, gainful work. Like the court in *Thompson*, this Court finds good cause to remand so that Huffman can further develop the record.

Still, the Commissioner argues that the ALJ's error was harmless because a claimant typically carries the burden of showing that an error was not harmless. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). However, where the agency had a duty to help the claimant develop her claim, the process is not adversarial. *Id.* at 412 (citing *Walters v. National Assn. of Radiation Survivors*, 473

U.S. 305, 311 (1985)). "These facts might lead a reviewing court to consider harmful in a [claimant]'s case error that it might consider harmless in other circumstances." *Id.* Moreover, a *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines*, 404 U.S. 519. A reviewing court's "harmless-error" determination should include case-specific factors, such as

> an estimation of the likelihood that the result would have been different, an awareness of what body (jury, lower court, administrative agency) has the authority to reach that result, a consideration of the error's likely effects on the perceived fairness, integrity, or public reputation of judicial proceedings, and a hesitancy to generalize too broadly about particular kinds of errors when the specific factual circumstances in which the error arises may well make all the difference.

*Id.* at 411–12. The Court must apply these factors to the case and decide whether the record suggests the error was harmless. *Id.* at 414.

Here, the ALJ's error was not harmless merely because Huffman failed to show harm. The burden of showing harm was not Huffman's to bear because this was not a true adversarial situation. In fact, the ALJ had a heightened duty to help Huffman develop the record because she was a *pro se* claimant. Furthermore, the Court does not hold Huffman, a *pro se* claimant, to the same standards as an attorney. In addition, review of the "harmless-error" factors also favors remand in this case. Specifically, a high likelihood exists that the result could have been different if the ALJ had allowed Huffman to develop the record, primarily because the ALJ's unfavorable decision was heavily based on a lack of evidence that he should have advised her to obtain. In addition, the ALJ's failure to properly develop the record negatively affected the fairness of the administrative process because developing the record is what mitigates the harm from failing to obtain a valid waiver of counsel. Here, the ALJ erred twice and because legal advice and additional medical evidence could have made

a difference in this case, the Court cannot say that the error was harmless. Moreover, Huffman's difficult financial situation only increased the risk of harm.

Therefore, after applying the "harmless-error" factors to the case at hand, the Court finds that the record suggests the ALJ's error was not harmless. Huffman's waiver of her right to representation was invalid. The ALJ owed Huffman a heightened duty to develop the record fully and fairly, which he failed to do. The ALJ's error was not harmless and Huffman therefore should be given the chance to obtain counsel and present desirable evidence to prove her claim. The Court thus reverses ALJ's decision and remands this case for a *de novo* hearing and a new decision. Huffman should have an opportunity to obtain counsel, obtain and present additional evidence, and argue any issues at the new hearing. Because this case is being remanded, the Court need not address any other issues raised in regard to the ALJ's decision.

## IV. CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** relief in favor of the Plaintiff pursuant to sentence four of 42 U.S.C. § 405(g). [Doc. No. 26]. The Court **REMANDS** this case to the ALJ for further proceedings consistent with this decision. The clerk is instructed to term the case. **SO ORDERED.**

Dated this 3rd day of December, 2013.

S/Christopher A. Nuechterlein  
Christopher A. Nuechterlein  
United States Magistrate Judge